UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
MARILYN R. LAFLAIR, :
 :
                              Plaintiff, : No. 18-CV-
 :
      - against - :
 :
JOHNSON & JOHNSON; JOHNSON & JOHNSON :
CONSUMER INC.; CYPRUS AMAX MINERALS : **NOTICE OF REMOVAL**
COMPANY, individually and as successor to Charles :
Mathieu, Inc., Metropolitan Talc Co., American Talc :  Case No.: 8:18-CV-1270 (BKS/CFH)
Co., and Resource Processors, Inc.; CYPRUS MINES :
CORPORATION, individually and as successor to :
Charles Mathieu, Inc., Metropolitan Talc Co., :
American Talc Co., and Resource Processors, Inc.; :
IMERYS TALC AMERICA, INC., individually and as :
successor to Windsor Minerals, Inc., Charles Mathieu, :
Inc., Metropolitan Talc Co., American Talc Co., :
Cyprus Industrial Minerals Co., and Resource :
Processors, Inc.; IMERYS TALC VERMONT, INC.; :
IMERYS USA, INC.; KOLMAR LABORATORIES, :
INC., :
 :
                              Defendants. :
------------------------------------------------------------------x

TO: THE JUDGES FOR THE UNITED STATES DISTRICT
       COURT FOR THE NORTHERN DISTRICT OF NEW YORK:

PLEASE TAKE NOTICE that Defendants Johnson & Johnson ("J&J") and Johnson & Johnson Consumer Inc. ("JJCI"), f/k/a Johnson & Johnson Consumer Companies, Inc. (collectively, the "J&J Defendants"), by and through their undersigned attorneys and pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, hereby remove the action entitled *Marilyn R. LaFlair v. Johnson & Johnson, et al.*, filed in the Supreme Court of the State of New York, County of St. Lawrence and bearing Index No. EFCV-2018-0153960, to the United States District Court for the Northern District of New York. As required by 28 U.S.C. § 1446(a), the J&J Defendants set forth below a short and plain statement of the grounds for removal:

## NATURE OF THE ACTION

1. On October 17, 2018, Plaintiff Marilyn R. Laflair, citizen of the State of New York, filed a lawsuit in the Supreme Court of the State of New York titled *Laflair v. Johnson & Johnson et. al.*, Index No. EFCV-2018-0153960. (*See* Compl. (attached as **Exhibit A**).)

2. Plaintiff alleges that she was exposed to asbestos-containing talcum powder products and now suffers from mesothelioma. (*See id.* ¶¶ 3, 4.)

## GROUNDS FOR REMOVAL

**I. REMOVAL IS PROPER BECAUSE THIS COURT HAS SUBJECT-MATTER JURISDICTION PURSUANT TO 28 U.S.C. §§ 1332 AND 1441.**

3. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because this is a civil action between citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive of costs and interest.

**A. The Parties That Are Not Fraudulently Joined Are Diverse**

4. The J&J Defendants are, and were at the time Plaintiff commenced this action, corporations organized under the laws of the State of New Jersey with their principal places of business in the State of New Jersey, and are therefore citizens of the State of New Jersey for the purposes of determining diversity. *See* 28 U.S.C. § 1332(c)(1).

5. On information and belief, Cyprus Amax Minerals Company is, and was at the time Plaintiff commenced this action, a corporation organized under the laws of the State of Delaware with its principal place of business in the State of Arizona, and is therefore a citizen of the States of Delaware and Arizona for the purposes of determining diversity. *See* 28 U.S.C. § 1332(c)(1).

6. On information and belief, Cyprus Mines Corporation is, and was at the time Plaintiff commenced this action, a corporation organized under the laws of the State of Delaware

with its principal place of business in the State of Arizona, and is therefore a citizen of the States of Delaware and Arizona for the purposes of determining diversity.  *See* 28 U.S.C. § 1332(c)(1).

7. On information and belief, Imerys Talc America, Inc. ("Imerys") is, and was at the time Plaintiff commenced this action, a corporation organized under the laws of the State of Delaware with its principal place of business in the State of California, and is therefore a citizen of the States of Delaware and California for the purposes of determining diversity.  *See* 28 U.S.C. § 1332(c)(1).

8. On information and belief, Imerys Talc Vermont, Inc. is, and was at the time Plaintiff commenced this action, a corporation organized under the laws of the State of Vermont with its principal place of business in the State of California, and is therefore a citizen of the States of Vermont and California for the purposes of determining diversity.  *See* 28 U.S.C. § 1332(c)(1).

9. On information and belief, Imerys USA, Inc. is, and was at the time Plaintiff commenced this action, a corporation organized under the laws of the State of Delaware with its principal place of business in the State of Georgia, and is therefore a citizen of the States of Georgia and Delaware for the purposes of determining diversity.  *See* 28 U.S.C. § 1332(c)(1).

10. Plaintiff filed this case in the State of New York and alleges that she is a citizen of New York.  (*See* Compl. ¶ 1, 2.)

11. Although Kolmar Laboratories, Inc. ("Kolmar") is alleged to be a citizen of New York, it has been fraudulently joined in this action and its citizenship should be disregarded for purposes of diversity jurisdiction.[1]

---

[1] The J&J Defendants do not concede that all defendants properly joined to this action are properly named in this action.  Nonetheless, their inclusion in this lawsuit does not affect the Court's subject-matter jurisdiction.

3

12. Accordingly, there is complete diversity of citizenship between Plaintiff and the properly joined and served defendants and thus, removal is proper. 28 U.S.C. §§ 1332(a), 1441(a).

### B. Plaintiff Has Fraudulently Joined Kolmar, And Its Citizenship Should Therefore Be Disregarded

13. "The doctrine of fraudulent joinder is meant to prevent plaintiffs from joining non-diverse parties in an effort to defeat federal jurisdiction." *Sitafalwalla v. Toyota Motor Sales, U.S.A., Inc.*, No. 15-CV-1807(ADS)(GRB), 2016 U.S. Dist. LEXIS 22560, at *9 (E.D.N.Y. Feb. 24, 2016) (quoting *Briarpatch Ltd., L.P. v. Phx. Pictures, Inc.*, 373 F.3d 296, 302 (2d Cir. 2004)). "Under the doctrine, courts overlook the presence of a non-diverse defendant if from the pleadings there is no possibility that the claims against that defendant could be asserted in state court." *Id.* (quoting *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 356 (2d Cir. 2011)); *see also In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 281 (S.D.N.Y. 2001) ("The Second Circuit's standard for fraudulent joinder allows for removal despite the presence of non-diverse defendants if the claims against those defendants have no basis in fact."); *City of Syracuse v. Loomis Armored US, LLC*, No. 5:11-cv-00744 (MAD/GHL), 2011 U.S. Dist. LEXIS 144530, at *13-21 (N.D.N.Y. Dec. 15, 2011) (setting forth Second Circuit fraudulent joinder standard and denying motion to remand because there was no possibility plaintiff could state a cause of action against the non-diverse defendant in state court).

### i. *Plaintiff's Complaint Fails to State a Claim Against Kolmar*

14. Here, there is no possibility that the claims against Kolmar could be asserted in state court because there are no causes of action pled against Kolmar that could result in liability. Plaintiff has directed only one allegation in the Complaint to Kolmar: "Defendant Kolmar Laboratories, Inc. was and still is a duly organized foreign corporation doing business and/or

4

transacting business in the State of New York and/or should have expected its acts to have consequences within the State of New York, with a principal place of business located in Port Jervis, New York." (Compl. ¶ 16.)  Plaintiff does not allege that Kolmar mined, milled, processed, manufactured, designed, tested, assembled, fashioned, fabricated, packaged, supplied, distributed, delivered, marketed, sold or did anything else in relation to the talcum powder at issue here.  There are no other allegations in the Complaint regarding Kolmar and certainly no contentions that Kolmar was in any way negligent or otherwise liable with respect to the talcum powder Plaintiff alleges she was exposed to.  Without more, Plaintiff has not sufficiently alleged any claims against Kolmar under New York's pleading standard.  *See, e.g.*, CPLR § 3013; *Detringo v. South Is. Family Ed., LLC*, 158 A.D.3d 609, 610 (2d Dep't 2018) (vague and conclusory allegations insufficient); *Shariff v. Murray*, 33 A.D.3d 688, 690 (2d Dep't 2006) ("vague and conclusory allegations will not suffice").  Nor do the allegations in the Complaint meet the pleading standards of the Federal Rules of Civil Procedure as Plaintiff has failed to plead "factual content that [would allow] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atlantic v. Twombly*, 550 U.S. 544 (2007).

15.    Even if the generic allegations in the Complaint regarding "Defendants" were read to include Kolmar, Plaintiff has still not pled a claim against Kolmar.  Nothing in the Complaint suggests that Kolmar's acts or omissions are the cause of Plaintiff's injuries, which is a required element of product liability claims under New York law.  *See Fahey v. A.O. Smith Corp.*, 77 A.D.3d 612, 615 (2d Dep't 2010) ("Whether an action is pleaded in strict products liability, breach of warranty, or negligence, the plaintiffs must prove that the alleged defect is a substantial cause of the events which produced the injury." (citing *Derdiarian v. Felix Constr.*

5

*Corp.*, 51 N.Y.2d 308, 315 (1980))); *Martins v. Little 40 Worth Assoc., Inc.*, 72 A.D.3d 483, 484 (1st Dep't 2010) (stating that to "establish a relationship between an individual's illness and a toxin suspected of causing such illness, a plaintiff must establish (1) his level of exposure to the toxin; (2) general causation [and] (3) specific causation" (citing *Parker v. Mobile Oil Corp.*, 7 N.Y.3d 434, 446 n.2 (2006))).

16. Plaintiff has fallen hopelessly short of satisfying this rudimentary standard with respect to alleging a causal connection between Kolmar's conduct and Plaintiff's alleged injury. Plaintiff proffers that her injury was proximately caused by her exposure to talcum powder "which was mined, milled, manufactured, designed, assembled, fabricated, supplied, constructed, processed, packaged, distributed, delivered, purchased, and/or sold by the Defendants." (Compl. ¶ 27; *see also* Compl. ¶ 40 ("The Defendants' negligence directly and proximately caused the Plaintiff's asbestos disease.").)

17. As other courts have found, however, such boilerplate allegations directed to all defendants do not establish a causal connection between the injury and the conduct of the non-diverse defendant sufficient to defeat diversity jurisdiction. *See, e.g.*, *In re Rezulin*, 133 F. Supp. 2d at 291 (stating that plaintiffs made "no allegations specifically against the [non-diverse defendants], but instead lump[ed] them together" with other defendants, and plaintiffs thus failed to show non-diverse "defendants' acts proximately caused the alleged injuries"); *In re Pradaxa (Dabigatran Etexilate) Prods. Liab. Litig.*, 2013 U.S. Dist. LEXIS 24313, at *26 (S.D. Ill. Feb. 22, 2013) ("[G]eneric allegations as to all of the defendants do not establish that [non-diverse defendants were], in any way, responsible for the product that allegedly caused the plaintiffs' injuries."); *Beavers v. Depuy Orthopedics, Inc.*, 2012 U.S. Dist. LEXIS 74453, at *13 (N.D. Ohio May 30, 2012) (non-diverse defendant was fraudulently joined where plaintiff's allegations

6

failed to distinguish between diverse and non-diverse defendants); *Walker v. Medtronic, Inc.*, 2003 U.S. Dist. LEXIS 26549, at *10 (N.D. Miss. June 4, 2003) ("boilerplate language that collectively implicates the Defendants as a group" is "plainly deficient" to defeat removal).

18. Accordingly, Plaintiff's boilerplate allegations directed to all Defendants do not establish a causal link between the injury and the conduct of Kolmar, the only in-state defendant in this action.

### ii. *Plaintiff Cannot State a Claim Against Kolmar Under New York Law*

19. Notwithstanding Plaintiff's failure to state a claim against Kolmar in her instant pleading, similar pleadings filed by Plaintiff's counsel Levy Konigsberg in other jurisdictions in New York make clear that even if Plaintiff were able to articulate more fulsome allegations against Kolmar, she would still fail to state a claim against Kolmar under New York law because Kolmar is *at best* an upstream contract manufacturer of cosmetic talc products that is immune to liability premised on any of Plaintiff's legal theories in this case.

20. For example, attached hereto as **Exhibit B** is a true and correct copy of a complaint filed by the Levy Konigsberg firm on August 14, 2018 in the case of *Laura Shanahan et al. v. Kolmar Laboratories, Inc., et al.*, No. 190330/2018 (Sup. Ct., N.Y. Cty.)[2], which asserts claims (albeit in more detail) stemming from the same theory that underlies the instant case: That Plaintiff contracted mesothelioma as a result of her use of allegedly asbestos-contaminated cosmetic talcum powder products manufactured by the J&J Defendants out of raw talc supplied by various other defendants.

---

[2] As with this case, the J&J Defendants removed the *Shanahan* case to the United States District Court for the Southern District of New York, where it is currently pending under Index No. 1:18-cv-08317. Plaintiffs' motion to remand the *Shanahan* case, which the J&J Defendants have opposed, remains *sub judice*.

7

21. In the *Shanahan* complaint, plaintiffs allege *inter alia* that their basis for asserting strict liability and negligence claims against Kolmar is premised upon the theory that "J&J transacted business with Kolmar in New York, including contracting for, among other things, the manufacturing, sampling and testing of ***its*** cosmetic talc" (*See* Ex. B . ¶ 6 (emphasis added))— i.e., the J&J Defendants' cosmetic talc products.

22. Even assuming this vague allegation regarding J&J's and Kolmar's contractual relationship were accompanied by any facts in the *Shanahan* complaint—which it is not—it (at most) suggests that Kolmar manufactured, sampled and tested the J&J Defendants' talcum powder products, which would not support the imposition of liability on Kolmar in any event. This is so because contract manufacturers "cannot be held liable for producing a product with specifications that are beyond [their] control[.]"  63A Am. Jur. 2d Products Liability § 1385.

23. The contract specifications defense safeguards a manufacturer from liability for injuries allegedly caused by a defect in a product it manufactures in accordance with specifications and plans supplied by a purchaser, as long as the alleged defect is not obvious. The Restatement (Second) of Torts provides that an independent "contractor is not required to sit in judgment on the plans and specifications or the materials provided by his employer" and is not liable for their insufficiency unless the design or material specified "is so obviously bad that a competent contractor would realize that there was a grave chance that his product would be dangerously unsafe."  See Restatement (Second) of Torts § 404 cmt. a (1965).  This principle makes good sense; otherwise, manufacturing contractors would be required to scrutinize, among other things, the chemistry and labeling of the product, and employ experts to review and evaluate the soundness of the plans and specifications as well as the proposed use of the product.

8

24. Consistent with this principle, New York courts have recognized that "[w]hen a product is manufactured in accordance with plans and specifications provided by the purchaser, the manufacturer is not liable for an injury caused by an alleged design defect in the product." *Houlihan v. Morrison Knudsen Corp.*, 2 A.D.3d 493, 494 (2d Dept. 2003) (granting contract manufacturer summary judgment where "[t]he affidavit of the plaintiff's engineering expert failed to raise a triable [issue] of fact since it was conclusory and unsupported by any foundational data or facts").

25. That is certainly the case here. According to the *Shanahan* complaint, "J&J transacted business with Kolmar in New York, including contracting for, among other things, the manufacturing, sampling and testing of its cosmetic talc." (Ex. B at ¶ 6.) And the only fair interpretation of this allegation is that Kolmar, in turn, manufactured, sampled and tested the J&J Defendants' cosmetic talc products according to the J&J Defendants' specifications. Indeed, there is no allegation in the *Shanahan* complaint suggesting—let alone stating—otherwise. And there are is no reason to believe that Plaintiff's theory in this case is any different. Accordingly, liability premised on any purported defect in the J&J Defendants' cosmetic talc products is foreclosed under New York's contract-specifications defense.

26. For all of these reasons, Kolmar is fraudulently joined and its citizenship should therefore be disregarded.

**C.    The Amount In Controversy Exceeds $75,000**

27. Plaintiff seeks to recover compensatory damages as a result of her diagnosis with mesothelioma, which she claims was allegedly caused by her exposure to talc and talcum powder. (*See generally* Compl.) Plaintiff also requests punitive damages (*see* Compl. ¶¶ 44-47), which are included in the amount in controversy. *See Bell v. Preferred Life Assurance Soc'y*, 320 U.S. 238, 240 (1943) ("Where both actual and punitive damages are recoverable under a

9

complaint each must be considered to the extent claimed in determining [the] jurisdictional amount.").

28.     Where, as here, Plaintiff alleges serious bodily injuries and/or chronic or permanent medical conditions, courts have readily found that the amount-in-controversy requirement is satisfied.  *See, e.g.*, *In re Rezulin*, 133 F. Supp. 2d at 296 (finding that a complaint alleging various injuries from taking a prescription drug "obviously asserts a claim exceeding $75,000"); *Allmon v. Walgreens Co.*, 2010 U.S. Dist. LEXIS 33083, at *2 (E.D. Mo. Apr. 5, 2010) (holding amount-in-controversy requirement satisfied where plaintiff alleged "extreme weight loss, stunted growth, menstrual problems, ovarian cysts, and diabetes"); *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig.*, 692 F. Supp. 2d 1025, 1040 (S.D. Ill. 2010) ("Given the severe and ongoing nature of the injuries alleged, the Court finds that it is plausible and supported by the preponderance of the evidence that the amount in controversy has been established.").

## II.     THE J&J DEFENDANTS HAVE COMPLIED WITH ALL REMOVAL PROCEDURES.

29.     Plaintiff's Summons and Complaint was filed on October 17, 2018.  Pursuant to 28 U.S.C. § 1446(b), this Notice of Removal is timely because 30 days have not elapsed since the J&J Defendants first received notice of Plaintiff's Complaint.

30.     The Supreme Court of the State of New York, County of St. Lawrence, is located within the Northern District of New York.  *See* 28 U.S.C. § 112(a).  Therefore, venue for this action is proper in this Court because the Northern District of New York is the "district and division embracing the place where such action is pending."  *See id.* § 1441(a).

31.     Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings, orders, and other documents on file with the New York Supreme Court are attached hereto as **Exhibit A**.

32. Co-defendants Cyprus Amax Minerals Company, Cyprus Mines Corporation, Imerys, Imerys Talc Vermont, Inc., and Imerys USA, Inc., have consented to this Notice of Removal. A true and correct copy of their consent is attached hereto as **Exhibit C**.

WHEREFORE, The J&J Defendants give notice that the matter bearing Index No. EFCV-2018-0153960 in the Supreme Court of the State of New York, County of St. Lawrence, is hereby removed to the United States District Court for the Northern District of New York, and request that this Court retain jurisdiction for all further proceedings in this matter.

Dated:    New York, New York
          October 29, 2018

                                        Respectfully submitted,

                                        PATTERSON BELKNAP WEBB & TYLER LLP

                                        By: _____
                                            John D. Winter
                                            Thomas P. Kurland
                                        1133 Avenue of the Americas
                                        New York, New York 10036
                                        T:  212-336-2000
                                        F:  212-336-2222
                                        E:  jwinter@pbwt.com
                                            tkurland@pbwt.com

                                        *Attorneys for Defendants Johnson & Johnson*
                                        *and Johnson & Johnson Consumer Inc.*

TO:   Patrick Ian Andrews, Esq.
      LEVY KONIGSBERG LLP
      800 Third Avenue, 11th Floor
      New York, NY 10022
      T:  212-605-6200
      E:  pandrews@levylaw.com
      *Attorneys for Plaintiff*

Peter Dinunzio, Esq.
CLYDE & COMPANY
405 Lexington Avenue, 16th Floor
New York, New York 10174
T:  212-710-3931
E:  peter.dinunzio@clydeco.us
*Attorneys for Defendant Kolmar Laboratories, Inc.*

Andrew Sapon, Esq.
LITCHFIELD CAVO LLP
420 Lexington Ave., Suite 2104
New York, NY 10170
T:  212-434-0100
E:  sapon@litchfieldcavo.com
*Attorneys for Cyprus Amax Minerals Co., Cyprus Mines Corporation, Imerys Talc America, Inc., Imerys Talc Vermont, Inc., and Imerys USA, Inc.*