UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

MARILYN R. LAFLAIR,

                              Plaintiff,

v.

JOHNSON & JOHNSON; JOHNSON & JOHNSON          8:18-CV-1270 (BKS/CFH)
CONSUMER INC.; CYPRUS AMAX MINERALS
COMPANY, individually and as successor to Charles
Mathieu, Inc., Metropolitan Talc Co., American Talc Co.,
and Resource Processors, Inc.; CYPRUS MINES
CORPORATION, individually and as successor to Charles
Mathieu, Inc., Metropolitan Talc Co., American Talc Co.,
and Resource Processors, Inc.; IMERYS TALC
AMERICA, INC., individually and as successor to
Windsor Minerals, Inc., Charles Mathieu, Inc.,
Metropolitan Talc Co., American Talc Co., Cyprus
Industrial Minerals Co., and Resource Processors, Inc.;
IMERYS TALC VERMONT, INC.; KOLMAR
LABORATORIES, INC.,[1]

                              Defendants.
_____

**Appearances:**

*For Plaintiff*:
Donald P. Blydenburgh
Amber R. Long
Levy Konigsberg, LLP
800 Third Avenue, 11th Floor
New York, NY 10022

*For Defendants Johnson & Johnson and
Johnson & Johnson Consumer, Inc.*:
John D. Winter
Thomas P. Kurland
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036

*For the Cyprus and Imerys Talc Defendants*:
Michael R. L'Homme
Litchfield, Cavo Law Firm
420 Lexington Avenue, Suite 2104
New York, NY 10170

*For Defendant Kolmar Laboratories, Inc.*:
Nicholas L. Magali
Clyde & Co. US LLP
405 Lexington Avenue, 16th Floor
New York, NY 10174

---

[1] Imerys USA, Inc. was dismissed from the action by stipulation of discontinuance on June 24, 2019. (Dkt. No. 49).

**Hon. Brenda K. Sannes, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

**I.      INTRODUCTION**

On October 29, 2018, Defendants Johnson & Johnson and Johnson & Johnson Consumer, Inc. ("J&J") removed this action from the Supreme Court of the State of New York, County of St. Lawrence to the United States District Court for the Northern District of New York under 28 U.S.C. § 1441(a). (Dkt. No. 1). Currently pending before the Court is Plaintiff's motion to remand and request for attorney's fees under 28 U.S.C. § 1447(c). (Dkt. No. 14). J&J opposes the motion. (Dkt. No. 31). For the reasons below, Plaintiff's motion to remand is granted and her request for attorney's fees is denied.

**II.     FACTUAL AND PROCEDURAL BACKGROUND**

On October 17, 2018, Plaintiff initiated this personal injury and product liability action by filing a Complaint in New York Supreme Court, County of St. Lawrence. (Dkt. No. 1-1). In the Complaint, Plaintiff alleges that asbestos-contaminated cosmetic talcum powder products that were mined, milled, marketed, and sold by Defendants caused her to develop malignant mesothelioma. (*Id.* ¶¶ 3–4). She asserts various state-law products liability and personal injury causes of action, for which she seeks compensatory and punitive damages. (*Id.* ¶¶ 20–47). Relevant to the Court's consideration of the instant motion, the Complaint alleges that Plaintiff—a resident of St. Lawrence County—and Defendant Kolmar Laboratories, Inc. ("Kolmar")—a "foreign corporation . . . with a principal place of business located in Port Jervis"—are citizens of New York. (*Id.* ¶¶ 2, 16).

On October 29, 2018, J&J removed the action to this this Court. (Dkt. No. 1). Although the Complaint indicates that Plaintiff and Kolmar are of non-diverse citizenship, thus depriving the Court of subject matter jurisdiction, J&J argues that the Court should disregard Kolmar's

2

citizenship because "it has been fraudulently joined to the action." (Dkt. No. 1, ¶ 11; Dkt. No. 31, at 9). Specifically, J&J argues that Plaintiff's "boilerplate allegations directed to all defendants" fall short of the pleading standards of New York and the Federal Rules of Civil Procedure, because "there are no allegations in the Complaint regarding Kolmar and certainly no contentions that Kolmar was in any way negligent or otherwise liable with respect to the talcum powder Plaintiff alleges she was exposed to." (Dkt. No 1, ¶¶ 14–17). Furthermore, J&J argues that, even if such allegations were sufficient, they "at most" suggest that "Kolmar manufactured, sampled and tested the J&J Defendants' talcum powder products" "according to the . . . specifications" of J&J. (*Id.* ¶¶ 22, 25). Such a claim, J&J contends, must fail because any theory of Kolmar's "liability premised on any purported defect in . . . J&J['s] . . . cosmetic talc products is foreclosed under New York's contract-specifications defense." (*Id.* ¶ 25).

In her November 13, 2018 motion to remand this action to state court, Plaintiff argues that, contrary to J&J's stated basis for removal, "Plaintiff's allegations against Kolmar in this case wholly comply with New York's liberal pleading standard." (Dkt. No. 14-1, at 3). Plaintiff further argues that, because "the contract-specification defense is an affirmative defense with elements a defendant must establish," J&J "has failed to, and cannot, conclusively establish the defense as required to warrant removal" on the basis of Kolmar's purportedly fraudulent joinder to this action. (*Id.* at 6–7). Rather, Plaintiff argues, "all J&J has done is point to an affirmative defense Kolmar may enjoy after discovery has been conducted," which is insufficient "to carry the 'heavy burden' of showing there is 'no possibility' of recovery against the non-diverse defendant" required to establish fraudulent joinder. (*Id.* at 8).

## III. STANDARD OF REVIEW

"Generally, any civil suit initiated in state court over which a district court would have had original jurisdiction 'may be removed by . . . the defendants, to the district court of the

3

United States for the district . . . embracing the place where such action is pending.'" *Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699, 704 (2d Cir. 2019) (quoting 28 U.S.C. § 1441(a)). "Section 1441 permits removal on the basis of either federal question jurisdiction or diversity of citizenship." *Id.* (citing *Marcus v. AT&T Corp.*, 138 F.3d 46, 52 (2d Cir. 1998)). The district courts have diversity jurisdiction "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 356 (2d Cir. 2011) (quoting 28 U.S.C. § 1332(a)). "To remove a case based on diversity jurisdiction, the diverse defendant must aver that all of the requirements of diversity jurisdiction have been met." *Id.* (citing 28 U.S.C. § 1446(a)).

If, however, a district court determines that it lacks subject-matter jurisdiction over a case removed from state court, the case must be remanded. 28 U.S.C. § 1447(c). "When a party challenges the removal of an action from state court, the burden falls on the removing party to establish its right to a federal forum by competent proof." *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, No. 00-cv-1898, 2006 WL 1004725, at *2, 2006 U.S. Dist. LEXIS 20575, at *7 (S.D.N.Y. Apr. 17, 2006). In light of "the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability." *Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 213 (2d Cir. 2013) (quoting *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 274 (2d Cir. 1994)). "In making this determination, courts are permitted to look to materials outside the pleadings, 'includ[ing] documents appended to a notice of removal or a motion to remand that convey information essential to the court's jurisdictional analysis.'" *Schulman v. MyWebGrocer, Inc.*, No. 14-cv-7252, 2015 WL 3447224, at *1, 2015

U.S. Dist. LEXIS 68954, at *3 (E.D.N.Y. May 28, 2015) (alteration in original) (quoting *Romano v. Kazacos*, 609 F.3d 512, 520 (2d Cir. 2010)).

## IV. DISCUSSION

### A. Fraudulent Joinder

It is well established that "a plaintiff may not defeat a federal court's diversity jurisdiction and a defendant's right of removal by merely joining as [a] defendant[] [a] part[y] with no real connection with the controversy." *Pampillonia*, 138 F.3d at 460–61 (2d Cir. 1998). Under the doctrine of fraudulent joinder, courts overlook the presence of a non-diverse defendant if "there is no possibility, based on the pleadings, that [the] plaintiff can state a cause of action against the non-diverse defendant in state court." *Id.* at 461. "In order to show that naming a non-diverse defendant is a 'fraudulent joinder' effected to defeat diversity, the defendant must demonstrate, by clear and convincing evidence, either that there has been outright fraud committed in the plaintiff's pleadings, or that there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendant in state court." *Id.*

As summarized above, Plaintiff argues that J&J has failed to demonstrate that Kolmar is fraudulently joined to this action because it has failed to "demonstrate, by clear and convincing evidence, that there is 'no possibility, based on the pleadings, that [Plaintiff] can state a cause of action against the defendant in state court.'" (Dkt. No. 14-1, at 2 (quoting *Winters v. Alza Corp.*, 690 F. Supp. 2d 350, 353 (S.D.N.Y. 2010)). J&J responds that it has done so because: (i) "there are no factual allegations in the Complaint regarding Kolmar other than an assertion of its citizenship"; and (ii) because "Kolmar is at best an upstream contract manufacturer of cosmetic talc products," it is "immune from liability" under New York's "contract specification" defense. (Dkt. No. 31, at 6–7). The Court considers J&J's arguments in turn below.

5

### 1. New York's Pleading Standard

"[T]he test of whether or not there has been fraudulent joinder is uniformly whether the plaintiff can establish a claim under state, not federal law." *Fed. Ins. Co. v. Tyco Int'l Ltd.*, 422 F. Supp. 2d 357, 378 (S.D.N.Y. 2006) (internal quotation marks omitted). "[C]ourts apply the state pleading rules relevant to the particular pleading at issue in deciding whether a plaintiff could have asserted a viable claim in state court based on that pleading." *MBIA Ins. Corp. v. Royal Bank of Canada*, 706 F. Supp. 2d 380, 394 (S.D.N.Y. 2009). Under New York law, "a complaint must plead facts with sufficient particularity 'to give the court and parties notice of the transactions, occurrences, or series of transactions or occurrences, intended to be proved and the material elements of each cause of action or defense.'" *Segal v. Firtash*, No. 13-cv-7818, 2014 WL 4470426, at *4, 2014 U.S. Dist. LEXIS 126569, at *10 (S.D.N.Y. Sept. 9, 2014) (quoting N.Y. C.P.L.R. § 3013). "That is, a complaint must plead facts sufficient to 'identify the transaction and indicate the theory of redress to enable the court to control the matter and the adversary to prepare.'" *Shanahan v. Kolmar Labs., Inc.*, No. 18-cv-8317, 2019 WL 935164, at *1, 2019 U.S. Dist. LEXIS 30354, at *4 (S.D.N.Y. Feb. 26, 2019) (quoting *Guggenheimer v. Ginzburg*, 372 N.E.2d 17, 21 (N.Y. 1977))[2]; *see also MBIA Ins. Corp.*, 706 F. Supp. 2d at 394 (explaining that New York's pleading standard requires only "that a plaintiff need . . . provide 'at least basic information concerning the nature of a plaintiff's claim and the relief sought.'" (quoting *Parker v. Mack*, 61 N.Y.2d 114, 117 (1984))). "In addition, in the context of fraudulent joinder, '[a]ll uncertainties in applicable state law are resolved in favor of the plaintiff, and the

---

[2] On March 15, 2019, Plaintiff submitted a letter brief drawing the Court's attention to *Shanahan v. Kolmar Labs., Inc.*, 2019 WL 935164, 2019 U.S. Dist. LEXIS 30354, recently decided in the Southern District of New York. (Dkt. No. 39). *Shanahan* involves virtually identical facts, defendants, procedural characteristics, and legal arguments to those at issue here. There, Judge Furman remanded the action to state court, concluding that J&J failed to show that Kolmar was fraudulently joined. 2019 WL 935164, at *2-3, 2019 U.S. Dist. LEXIS 30354, at *5–6. This Court reaches the same result for many of the same reasons.

complaint is subjected to less searching scrutiny than on a motion to dismiss for failure to state a claim.'" *Battaglia v. Shore Parkway Owner LLC*, 249 F. Supp. 3d 668, 671 (E.D.N.Y. 2017) (quoting *Campisi v. Swissport Cargo Servs. LP*, No. 09-cv-1507, 2010 WL 375878, at *2, 2010 U.S. Dist. LEXIS 5882, at *5 (E.D.N.Y. Jan. 26, 2010)).

As J&J correctly argues, "'conclusory allegations—claims consisting of bare legal conclusions with no factual specificity—are insufficient to survive" "even under New York's liberal pleading standard." (Dkt. No. 31, at 12–13 (quoting *Segal*, 2014 WL 4470426, at *5, 2014 U.S. Dist. LEXIS 126569, at *14 (S.D.N.Y. Sept. 9, 2014)). Here, however, the Complaint contains the following factual allegations: (i) Kolmar maintains its "principal place of business . . . in Port Jervis, New York"; (ii) "[D]efendants . . . mined, milled, manufactured, designed, sold, supplied, and/or distributed asbestos-containing talc and talcum powder to which the Plaintiff was exposed"; (iii) "[D]efendants, acting in concert, failed to warn [P]laintiff of the known dangers and hazards of using their asbestos-containing talc and talcum powder products"; and (iv) as a "direct and proximate result of the . . . exposures, Plaintiff contracted malignant mesothelioma." (Dkt. No. 1-1, ¶¶ 3–4, 16–18). The Complaint further states that "the term 'Defendants' shall apply to all named business and/or corporate entities and/or such company's predecessors and/or successors-in-interest," (Dkt. No. 1-1, ¶ 3), thus requiring the Court to interpret each allegation as against Kolmar individually. While these "general allegation[s] would arguably be insufficient under federal pleading standards, the question at this stage is whether Plaintiff['s] pleadings are enough to give [her] some possibility of success against Kolmar in the *state* court from which the action was removed." *Shanahan*, 2019 WL 935164, at *1, 2019 U.S. Dist. LEXIS 30354, at *4–5.

7

J&J primarily takes issue with the method by which Plaintiff alleges facts against Defendants collectively. While J&J argues that this style of pleading typically "signifies fraudulent joinder," (Dkt. No. 31, at 12), J&J fails to explain how that reasoning applies to the facts alleged in this case. As J&J concedes, "the only fair interpretation" of Plaintiff's theory of liability is that "Kolmar . . . manufactured, sampled and tested the J&J Defendants' cosmetic talc products according to the J&J Defendants' specifications,"(Dkt. No. 1, ¶ 25); products Plaintiff expressly alleges purchasing and using over a number of years, (Dkt. No. 1-1, ¶ 3).[3] *Cf. In re Rezulin Prod. Liab. Litig.*, 133 F. Supp. 2d 272, 291 (S.D.N.Y. 2001) (concluding that defendant pharmacies were improperly joined where complaint failed to "allege that the defendant pharmacies sold or supplied Rezulin *to plaintiffs*"). Unlike the cases J&J cites where the plaintiff failed to create any factual link between the non-diverse defendant and the harm alleged, *see, e.g.*, *Aronis v. Merck & Co.*, 2005 WL 5518485, at *1, 2005 U.S. Dist. LEXIS 41531, at *3 (E.D. Cal. May 3, 2005) (allegation that "Vioxx is manufactured and distributed by the defendant" insufficient to state a claim against non-diverse pharmacist); *In re Rezulin Prod. Liab. Litig.*, 133 F. Supp. 2d at 291 (same); *Salisbury v. Purdue Pharma, L.P.*, 166 F. Supp. 2d 546, 552 (E.D. Ky. 2001) (failure to allege that "pharmacy defendants . . . provided the alleged warranty" fatal to breach of express warranty claims against non-diverse defendants), here Plaintiff has alleged a causal connection between Kolmar, the products Kolmar manufactured, and her mesothelioma.

---

[3] As J&J acknowledges, albeit in the context of discussing Kolmar's contract-specifications defense, "even a cursory review of the myriad documents cited by Plaintiff confirms that Kolmar was a contract manufacturer tasked with manufacturing, sampling and testing [J&J's] Baby Powder." (Dkt. No. 31, at 23). While such "post-removal filings must not be considered . . . to the extent that they present new causes of action or theories not raised in the controlling" pleading, "courts may consider documents other than the pleadings to the extent that the factual allegations in those documents clarify or amplify the claims actually alleged in the pleadings." *Segal*, 2014 WL 4470426, at *4, 2014 U.S. Dist. LEXIS 126569, at *10. The Court therefore considers those documents to the extent they "clarify or amplify" Plaintiff's allegations against Kolmar.

Accordingly, resolving all ambiguities in Plaintiff's favor and "taking into account New York's more lenient pleading standard, Plaintiff['s] allegations connecting Kolmar's conduct to [Plaintiff's] injuries are particular enough to create at least *some* possibility that Plaintiff[] could recover against Kolmar in New York's courts." *Shanahan*, 2019 WL 935164, at *1, 2019 U.S. Dist. LEXIS 30354, at *4–5.

### 2. Contract-Specification Defense

Under New York law, a manufacturer generally cannot be held liable "for an injury caused by an alleged design defect" in its product that is "manufactured in accordance with the plans and specifications provided by the purchaser." *Houlihan v. Morrison Knudsen Corp.*, 768 N.Y.S.2d 495, 496 (2d Dep't 2003). Whether the "contract-specification" doctrine is applicable as an affirmative defense in a given case, however, is a fact-intensive determination: it is not available where "the specifications are so patently defective that a manufacturer of ordinary prudence would be placed on notice that the product is dangerous and likely to cause injury." *Id.* Determining whether Kolmar is actually shielded from liability therefore "implicates factual questions that remain unresolved at this stage."[4] *Shanahan*, 2019 WL 935164, at *2, 2019 U.S. Dist. LEXIS 30354, at *7. Specifically, "for Kolmar to prevail . . . a factfinder would have to conclude that it manufactured the talc products according to someone else's 'plans and specifications' and that those plans and specifications were not 'so apparently defective' that an ordinarily prudent manufacturer would have been on notice of the dangerous defect." *Id.* (quoting *Ryan v. Feeney & Sheehan Bldg. Co.*, 239 N.Y. 43, 46 (1924)).

---

[4] As Plaintiff notes, although Kolmar's Answer in this case "assert[ed] seventy one affirmative defenses, it fail[ed] to assert the contract-specifications defense." (Dkt. No. 14-1, at 7; *see* Dkt. No. 10). In its Amended Answer, however, Kolmar added the contract-specifications defense as its seventy-second asserted affirmative defense. (Dkt. No. 30, at 21).

"At a minimum," however, "the latter question remains in dispute." *Id.* Here, the Complaint alleges that the Defendants "mined, milled, processed [and] manufactured" asbestos-containing talc and talcum powder when they knew or should have known that it "was inherently dangerous to those who used, handled or came into contact with" it. (Dkt. No. 1-1, ¶¶ 30–31). Furthermore, the documents Plaintiff has submitted indicate that, as early as the 1970s, Kolmar may have been aware that its talc products contained asbestos. (*See* Dkt. No. 14-1, at 9; Dkt. No. 14-8, at 2). Accordingly, "with all factual and legal ambiguities resolved in favor" of Plaintiff, the Court cannot conclude that J&J has met its burden of showing that the contract-specification defense "would have stood in the way of [P]laintiff's claims had this action remained in state court." *Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*, 373 F.3d 296, 302 (2d Cir. 2004). "In the absence of fraudulent joinder," this court has "no grounds to overlook [Kolmar's] citizenship," *id.* at 303, and remand to state court is therefore required.

      **B.**      **Defendants' Request to Defer Deciding Plaintiff's Motion**

On February 13, 2019, Defendants Imerys Talc America, Inc., Imerys Talc Vermont, Inc., and Imerys Talc Canada, Inc. (the "Imerys Defendants") voluntarily filed a petition to reorganize under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware. *In re Imerys Talc America, Inc., et al.*, No. 19-10289 (Imerys Talc America, Inc.), No. 19-10291 (Imerys Talc Vermont, Inc.), and No. 19-10292 (Imerys Talc Canada Inc.) (D. Del. Feb. 13, 2019). On February 20, 2019, the Imerys Defendants advised the Court that, under § 362 of the Bankruptcy Code, "the above-captioned action has been automatically stayed as against the Debtor-defendant(s)." (Dkt. No. 38). As the court explained in *Shanahan*, however, "[t]hat development does not, because it cannot, affect the question of whether to remand for lack of subject-matter jurisdiction, which—in any event—must be assessed as of the time the action was removed, when the bankruptcy stay did not exist."

10

2019 WL 935164, at *2 n.1, 2019 U.S. Dist. LEXIS 30354, at *8 n.1; *see also Anderton v. 3M Co.*, No. 18-cv-14949, 2019 WL 2009788, at *1 n.1, 2019 U.S. Dist. 77143, at *5 n.1 (D.N.J. May 7, 2019) ("Because this case was improperly removed, remanding does not constitute continuation of the proceedings.").

On April 19, 2019 and May 8, 2019, respectively, J&J and the Cyprus Defendants moved to stay this action and requested that the Court defer deciding Plaintiff's motion until the United States District Court of the District of Delaware decided J&J's motion to fix venue pending in proceedings related to Imerys' bankruptcy. (Dkt. No. 40, 47). On July 19, 2019, the District of Delaware denied that motion. *In re Imerys Talc America, Inc.*, 2019 WL 3253366, at *9, 2019 U.S. Dist. LEXIS 120572, at *31 (D. Del. July 19, 2019). Accordingly, Defendants' motion is denied as moot.

### C. Attorney's Fees

"An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). "Assessment of costs and fees against the removing defendants is within the court's discretion and does not require a finding of bad faith or frivolity." *MBIA Ins. Corp.*, 706 F. Supp. 2d at 400 (internal quotation marks omitted). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).

While ultimately unsuccessful, J&J has presented reasonable arguments in favor of allowing this case to proceed in federal court. Specifically, J&J has coherently argued that Plaintiff's allegations against Kolmar are too general to sustain her claims in state court and, in any event, Kolmar is shielded by the contract-specification defense. While these arguments may

11

fail to satisfy J&J's burden of demonstrating that Kolmar is fraudulently joined to this action, the Court does not find the existence of "unusual circumstances" or that J&J's proposed bases for removing this action were "objectively unreasonable" such that an award of fees is warranted. *Schulman*, 2015 WL 3447224, at *3–4, 2015 U.S. Dist. LEXIS 68954, at *8 (remanding but denying costs and fees, explaining that, "on an order to remand, fee shifting should only occur in 'unusual circumstances,' to avoid discouraging defendants from exercising their 'right to remove'" (quoting *Martin*, 546 U.S. at 140–41)). Accordingly, Plaintiff's request for costs and attorney's fees is denied.

## V. CONCLUSION

For these reasons, it is hereby

**ORDERED** that Plaintiff's motion to remand (Dkt. No. 14) is **GRANTED**, but her request for attorney's fees is **DENIED**; and it is further

**ORDERED** that Defendants' motion to stay (Dkt. Nos. 40, 47) is **DENIED as moot**; and it is further

**ORDERED** that this action is **REMANDED** to the Supreme Court of the State of New York, County of St. Lawrence for all further proceedings; and it is further

**ORDERED** that the Clerk is directed to mail a copy of this Memorandum-Decision and Order to the Clerk of the Supreme Court of the State of New York, County of St. Lawrence for filing in *LaFlair v. Johnson & Johnson, et al.*, Index No. EFCV-2018-0153960.

**IT IS SO ORDERED.**

Brenda K. Sannes
U.S. District Judge

Dated: July 31, 2019
       Syracuse, New York